CHICAGO ROLLER SKATE CO. v. NEW YORK PRODUCE EXCH. BANK.

(Supreme Court, Appellate Division, First Department.   November 3, 1911.)

BANKS AND BANKING (§ 189*)—EXCHANGE—PAYMENT OF DRAFTS.

>   Defendant bank received credits from a London bank, subject to plaintiff's sight drafts upon a London buyer, when accompanied by bills of lading covering shipments of merchandise for the same amount, and so advised the plaintiff. After the acceptance of several drafts the credit was canceled, and payment on a draft accompanying a bill of lading of a shipment of which defendant had no knowledge was refused, and the draft returned to plaintiff, who retained it and afterwards dealt with the shipment as its own, directing the carrier to deliver it to the buyer, and arranging a settlement with the buyer.  *Held* that, as there was no laches or concealment on defendant's part, plaintiff, by assuming control of the shipment, which was defendant's security against advances made, had terminated any right of recourse against defendant.

>   [Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 189.*]

Action by the Chicago Roller Skate Company against the New York Produce Exchange Bank.   Submission of controversy upon an agreed statement of facts.   Judgment for defendant.

Argued before INGRAHAM, P. J., and LAUGHLIN, SCOTT, MILLER, and DOWLING, JJ.

Theodore L. Bailey, for plaintiff.
Ambrose G. Todd, for defendant.

DOWLING, J.   From the agreed statement of facts herein it appears that plaintiff, a foreign corporation, having its office at Chicago, in the state of Illinois, contracted, prior to March 30, 1909, to sell to A. H. Selwyn, Limited, of London, England, certain merchandise, consisting of roller skates, of the value of about $1,100, and subsequently, and prior to May 14, 1909, contracted for other merchandise of the same character, to the further amount of about $230.   It was agreed between plaintiff and Selwyn that, as each shipment was made by the former, it was entitled to draw a sight draft on the latter, with bill of lading attached, for the amount of the shipment, which draft Selwyn would arrange to have paid by defendant at New York, upon presentation thereof with the bill of lading attached.   In pursuance thereof the London City and Midland Bank, acting on behalf of Selwyn, on March 20, 1909, instructed defendant to pay plaintiff the amount of its drafts on Selwyn, not exceeding $800, when accompanied with bill of lading, and authorized defendants to debit the account of the London bank with the amount of the payment.   Thereafter, on March 31, 1909, the amount of the payments so authorized was increased by the sum of $550, making a total authorized disbursement of $1,350.   The defendant duly acknowledged the receipt of these advices from the London bank.   On April 9, 1909, plaintiff wrote defendant:

"We have been instructed by our agents, A. H. Selwyn, Limited, of 33-37 Noble street, London, who have ordered from us some 700 pairs of skates, which will amount in the neighborhood of from $1,000 to $1,100, to draw sight drafts accompanied with bill of lading on you for the above amount.

We write to know, if we ship these goods to you, if you will accept our sight draft in the above firm's name and pay for these goods f. o. b. cars New York, less 2 per cent. ⸗As the shipment is about ready, we would thank you for an immediate reply."

To this the defendant replied as follows, on April 12, 1909:

"Replying to your esteemed favor of the 9th instant, we take pleasure in advising you that there have been opened credits aggregating $1,300, to be availed of by sight drafts drawn by your good selves on Selwyn, Limited, accompanied by bill of lading covering shipment of merchandise for same amount. It will be in order for you to draw in accordance with these terms on through bill of lading to London."

Thereafter plaintiff (relying on the letter of April 12th) on April 16 and 28, 1909, presented sight drafts to defendant, drawn on A. H. Selwyn, Limited, for $498.95 and $299.88, respectively, accompanied by bills of lading covering the shipment to Selwyn at London of merchandise to such amounts, and defendant paid the drafts and accepted the through bills of lading for the goods, which had been forwarded to London via the American Express company. On May 14, 1909, still relying on the same letter, plaintiff mailed a third sight draft on A. H. Selwyn, Limited, to defendant, amounting to $529.02, and accompanied by a bill of lading for goods to that amount, which had on the day prior been shipped by plaintiff to Selwyn. Before this draft was presented to defendant, and before it had any knowledge of this third shipment, it had received a cablegram, dated May 14, 1909, from the London City and Midland Bank as follows:

"Cancel credit favor Chicago Roller Skate Co. % Selwyn."

Defendant thereupon refused to pay the draft in question, and on May 17th telegraphed plaintiff:

"Yours 14th, credit canceled. Instruct what to do with documents"

—and followed this by a letter on May 18th, returning the draft and bill of lading to plaintiff, and advising it that, as the credit established by defendant's London correspondent had been canceled, it could make no further advances under the same. It is conceded that, under the agreement between the London bank and defendant, the latter was subject to the control and direction of the former in the opening and canceling of credits, although plaintiff had no knowledge of such agreement. Plaintiff declined to retain the draft and bill of lading returned to it, and the same were returned and again presented to defendant by plaintiff on May 21st, being once more returned to plaintiff on May 24th. It appears that disputes had arisen as to the condition in which the first two shipments of skates had arrived at London, and Selwyn claimed that they were not only rusted, but defective in many particulars, and that it had paid for goods in no way up to the contract requirements. Hence their direction to cancel the credit and refusal to pay for the third lot, which finally reached London after plaintiff had endeavored in vain to stop it in transit. Correspondence ensued between Selwyn and plaintiff, in the course of which Selwyn on June 15, 1909, wrote to plaintiff, referring to the goods covered by the third bill of lading:

"We would now suggest that the last lot of six cases invoiced on the 14th May should be delivered to us by the American Express Company, you instructing them in Chicago to do so. We will then go ahead, and if we can dispose of the skates without buffing at a reduction, we will do so; otherwise, we will have then buffed up at your expense. If you deliver the shipment now to hand without collect, this will mean an allowance of 529 of the total shipment, by which we take 1,321 pairs. This will work out at an allowance of 40 cents per pair, and, should the loss be less than this, we will remit you the difference; should it be more, we will have to charge you up with the amount of the difference. The American Express Company here are writing their Chicago office to cable them if you accept the above proposition, so that there may be no delay in settling this question, and so save the market by disposing of this bad stock, so that your giving instructions to the American Express Company in Chicago to deliver us the goods we shall hear within a day or two."

Thereafter plaintiff instructed the American Express Company, at London, to deliver the goods in question to Selwyn, and wrote the latter, in July, 1909:

"We instructed the American Express Company to turn over the six boxes of skates which they have in London. Sell these at whatever figure you can, and remit to us what is due us. The skates which we ship you hereafter will be polished, and we feel sure that you will have absolutely no complaint as to their finish."

The Chicago office of the American Express Company was the one which was advised to turn over the goods to Selwyn, and, having communicated the instructions to its London office, the agent of the latter wrote Selwyn on July 10, 1909:

"We confirm our telephone message of to-day, to the effect that we have received a wire from America indicating that the proposition to the Chicago Roller Skate Co. had been agreed to, viz., that they release the six cases covered by their invoice of May 14th, through bill of lading 8415, without payment, and that you will sell the skates you have on hand to the best advantage. We are therefore delivering to you the six cases covered by B/L8415 in accordance with our cable authority."

Selwyn sent to plaintiff a letter on the same date containing the following:

"We had this pleasure last, on the 30th ult., and now hear from the American Express Co., that they have had a cable from their Chicago office informing them that you agreed to the proposition contained in our letter to you dated the 15th of June, 1909. They are accordingly delivering us the six cases without payment, and we should suggest that you write to the New York Produce Exchange Bank, New York, and inform them that you have settled with us, and, therefore, you do not require the payment from them, as they do not like the way this transaction has taken place, as they always expect, when they advance money for their customers, that the manufacturers deliver salable goods in accordance with instructions."

The plaintiff has never been paid anything by Selwyn on account of the goods in question. Plaintiff seeks to establish the defendant's liability for the amount of the draft in suit on the ground that the latter's letter of April 12th constituted a contract between them, by which, in any event, defendant was bound to pay the amount of the draft upon presentation, when a bill of lading representing goods to an equal amount accompanied it, and that, regardless of the disposition thereafter made of the goods, defendant is liable, as plaintiff shipped

the goods relying on the alleged contract.  Concededly defendant never had any property of any kind belonging to Selwyn applicable to the payment of its obligations, save in so far as the London bank had established a credit for Selwyn with defendant.  The balance of this credit would have been sufficient to have met the third draft, but before it was presented the London bank canceled the remainder of the credit, as it had the undoubted right to do, and defendant then had no funds whatever applicable to Selwyn's credit against which to charge the amount of the draft, if paid.  It is not claimed that defendant has been guilty of any fraud or duplicity, or that the credit was collusively canceled.  The reason for cancellation appears in the dissatisfaction with the first two shipments, which had been paid for prior to delivery and before examination by the vendee.

Treating plaintiff's letter of April 9th and defendant's reply of April 12th as a contract, as plaintiff insists it is, then defendant agreed to honor plaintiff's drafts only when it was protected in their payment by the delivery into its possession of bills of lading for goods to an equal amount, so that the control of the goods furnished security for the advances made.  In the case at bar plaintiff itself violated what it claims to have been the contract by finally retaining the bill of lading, by dealing with the goods as its own, by treating with Selwyn directly for a settlement of the dispute over the purchase price, by reaching an arrangement with it, and by finally asserting its full ownership of the goods, by directing the carrier to deliver them to Selwyn.

Defendant has not disregarded any right of plaintiff.  The statements contained in its letter were correct in every particular.  It concealed no material fact from the plaintiff.  It was guilty of no laches, but promptly advised plaintiff of the cancellation of Selwyn's credit.  When plaintiff retained the bill of lading for these goods, and undertook to direct their disposition, it effectually terminated any right of recourse against the defendant, whom it had thus deprived of the security it was entitled to have as against any advances it made on Selwyn's account.

Judgment must be directed in favor of defendant, with costs.  All concur.